UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

––––––––––––––––––––––––––––––––––––
BARBARA STINSON,
                          Plaintiff,

              -v-

HOUSLANGER & ASSOCIATES,
PLLC, *et al.*,
                          Defendants.
––––––––––––––––––––––––––––––––––––

18-CV-11350 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Barbara Stinson brings this action against Defendants Houslanger & Associates, PLLC, Todd Houslanger, Matthew Blake, Harry Torres, Bryan Bryks, and Demi, LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York law. (*See* Dkt. No. 1 ("Compl.").) Harry Torres has not appeared in this action, and the Clerk of Court has entered a certificate of default against him. (Dkt. No. 74.) All other defendants have answered. (Dkt. Nos. 42, 45.) Defendants Houslanger & Associates, PLLC, Todd Houslanger, Matthew Blake, and Bryan Bryks (collectively, "Houslanger") now move for partial judgment on the pleadings. (Dkt. No. 122.) Defendant Demi, LLC ("Demi"), joins in Houslanger's motion, which it argues would dispose of all claims against it if granted. (Dkt. No. 124.) For the reasons that follow, Houslanger's motion for partial judgment on the pleadings is granted. Demi's motion for judgment on the pleadings is granted in part and denied in part.

**I.     Background**

The facts underlying this case began over a decade ago, in December 2005, when Demi, through its collection law firm Houslanger & Associates, PLLC, filed suit to collect $8,745.12 from Stinson. (Compl. ¶¶ 19–20.) According to Demi's suit, Stinson owed that amount on a Discovery credit card debt assigned to Demi that had defaulted in November 2002. (Compl.

1

¶ 20.) Stinson, however, never had an account with Discovery, and was not served a copy of the summons and complaint. (Compl. ¶¶ 21–22.) Nevertheless, in February 2006, Torres executed an affidavit of service, which Houslanger and Demi used to obtain a default judgment against Stinson in May 2006, despite the suit's falling outside the relevant statute of limitations. (Compl. ¶¶ 23–24.)

Twelve years later, in February 2018, Stinson finally learned about the Demi suit when Defendants sought to garnish her wages. (Compl. ¶¶ 32, 34.) Interest and fees resulted in Stinson's alleged debt totaling $19,209.48 — roughly half of her annual wages as a nursing assistant. (Compl. ¶¶ 34–35.) Stinson contacted Houslanger, informing them that she never had a Discover account, received service, or knew about the suit until receiving a letter from the sheriff demanding payment. (Compl. ¶¶ 34, 37.) Nevertheless, Houslanger demanded that she pay and offered to settle for a lump sum of $15,000. (Compl. ¶ 37)

Challenging the collection *pro se* in state court, Stinson produced evidence that she had never been served with the complaint, including W-2 tax forms and DMV records demonstrating that she lived at a different address than the one at which she was allegedly served by Torres. (Compl. ¶¶ 38–39, 56.) Stinson also produced the 1981 death certificate of her toddler son — the person whom Torres claimed, in his affidavit, to have served. (Compl. ¶ 56.)

A week before a hearing on an order to show cause, Houslanger sent Stinson a letter stating that Demi had decided to drop the case "[d]ue to the passage of time beyond the retention period of the original creditor" and "the inability to obtain witnesses and documents to establish the underlying claim." (Dkt. No. 1, Ex. 13 at 2 ¶ 1.[1]) The letter also stated that Houslanger

---

[1] The page number used for this document refers to the ECF-assigned pagination, *not* the document's original pagination, because the original pagination does not begin on the document's first page.

2

"wanted to advise you of this so that you may avoid the further inconvenience of coming to Court." (Dkt. No. 1, Ex. 13 at 1.) Enclosed was a document entitled "Mutual Stipulation Vacating Judgment, Discontinuance with Prejudice & General Release" ("Stipulation"), which, if signed, would vacate and discontinue with prejudice the 2006 default judgment against Stinson. (Dkt. No. 1, Ex. 13 at 2–3.) It also set forth, in relevant part:

> **Defendant[] Barbara J. Stinson . . . shall release and forever discharge Demi, LLC, Discover, Houslanger & Associates, PLLC**, its former, present and future parents, subsidiaries and/or affiliates, whether direct or indirect, and any and all former, present and future officers, directors, employees, representatives, predecessors, successors, agents, attorneys, independent contractors or assigns, **from any and all claims**, demands, liabilities, damages, losses or expenses relating to the account and attempts to collect same, including any and all alleged improper debt collection acts, **including claims alleged to be based upon federal FDCPA and/or other New York laws which may govern the collection of debts**, from the beginning of time to the date of execution of this agreement by all parties.

(Dkt. No. 1, Ex. 13 at 2 (emphasis added).) Byrks also included his business card with a handwritten note stating "Please contact me if you have any questions or concerns!" (Compl. ¶ 64; Dkt. No. 1-14.) Stinson found the language in the letter and Stipulation confusing and did not sign it. (Compl. ¶ 74.)

At the hearing to show cause, despite producing no evidence to refute Stinson's documentation, Houslanger and Demi refused to vacate the default judgment. (Compl. ¶¶ 77–79.) The court ultimately vacated the judgment the following month, and Stinson filed suit later that year. (Compl. ¶¶ 86, 88.) In her suit, Stinson alleges that Defendants, by attempting to collect an allegedly fraudulent debt, violated the FDCPA and New York law. (Compl. ¶¶ 125–146.) Houslanger and Demi have moved for judgment on the pleadings with respect to the allegedly fraudulent behavior based on the use of the letter and Stipulation sent to Stinson. (Dkt. Nos. 122, 124.)

3

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) authorizes the Court to grant judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 Civ. 6500, 2017 WL 4125368, at *4 (S.D.N.Y. Aug. 23, 2017) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).  A movant is thus entitled to prevail "only if [she] establishes that no material issue of fact remains to be resolved and that [she is] entitled to judgment as a matter of law." *Id.* (citation omitted).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Citibank, N.A. v. Tormar Assocs. LLC*, No. 15 Civ. 1932, 2015 WL 7288652, at *3 (S.D.N.Y. Nov. 17, 2015) (citation omitted). "In both postures, the district court must accept all allegations in the non-movant's pleadings as true and draw all inferences in that party's favor." *Id.* (alteration and citation omitted).

## III. Discussion

### A. Houslanger's Motion for Judgment on the Pleadings

Houslanger moves for partial judgment on the pleadings based solely on the notion that the Stipulation that Stinson was asked to sign, in conjunction with the letter, was not "deceptive" within the meaning of either the FDCPA or New York law.  The three standards involved, while similar, are distinguishable.

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A representation is 'deceptive' under section 1692e if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (internal quotation marks and citation omitted).  The

4

reasonableness of the interpretation is assessed from the prospective of the "least sophisticated consumer, who . . . lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Id.* (internal quotation marks and citation omitted); *see also Wagner v. Chiari & Ilecki, LLP*, 2020 WL 5265548 at *8 (2d Cir. Sept. 4, 2020) ("[E]ven if a debt collector accurately conveys the required information, a consumer may state a claim if she successfully alleges that the least sophisticated consumer would inaccurately interpret the message." (citation omitted)). "The standard is objective, pays no attention to the circumstances of the particular debtor in question, and asks only whether the hypothetical least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate." *Id.* (internal quotation marks, citation, and emphasis omitted).

New York law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." N.Y. Gen. Bus. Law § 349(a) ("Section 349"). To state a claim under this provision, "a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Conduct is misleading or deceptive under Section 349 if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). Houslanger argues that Stinson fails to allege the second and third elements to state a claim with respect to use of the Letter and Stipulation.

New York law also provides for a civil action against any attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487 ("Section 487"). Section 487 generally applies only to attorneys with a "chronic, extreme pattern of legal delinquency." *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 259–60 (S.D.N.Y. 2011) (citation omitted). *But see NYAT. Operating Co. v. Jackson, Lewis, Schnitzler & Krupman*, 741 N.Y.S.2d 385, 386 (N.Y. Sup. Ct. 2002) (concluding, "[a]bsent guidance from New York Appellate Courts," that Section 487 applies to a single incident of lying under oath).

### 1. Whether Use of the Letter and Stipulation Was Misleading Under the FDCPA and Section 349

Stinson claims that the letter and Stipulation, taken together, constitute misleading behavior. Specifically, she alleges that two facts are sufficient to render this conduct deceptive under the FDCPA and Section 349: (1) the statement in the letter that Houslanger "wanted to advise" Stinson of Defendants' desire to discontinue the claim so that Stinson could "avoid the further inconvenience of coming to Court" and (2) the "burying" of the release in the Stipulation in the middle of a dense paragraph filled with unnecessary legalese. (Dkt. No. 127 at 18–19.) Defendants, meanwhile, maintain that the release was written in clear language on the face of the document and therefore is not misleading. (Dkt. No. 123 at 5.)

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015), is instructive. There, the plaintiff bought a computer and "Protection Plan" from a Staples store. *Id*. at 293. The Protection Plan contract promised, *inter alia*, that Staples would "refer you to the nearest authorized repair center for service,"  "'24/7 technical support and customer service,' '100% parts and labor coverage,' and '[o]ne-time replacement or cash settlement if equipment cannot be repaired\*.'" *Id*. (citation omitted). The asterisk referred to a paragraph in small font on the back of the contract, which

6

read in pertinent part: "Some restrictions apply. For complete details, including Obligor Information, see Terms and Conditions. The plan term is inclusive of manufacturer's warranty and store return policy and does not replace the manufacturer's warranty." *Id*. (citation omitted).

The *Orlander* plaintiff received verbal reassurance from a Staples sales representative that "'[t]he manufacturer's warranty [would] not be sufficient to address issues that arise with the computer,' that 'pursuant to the manufacturer's plan, [p]laintiff [would] be required to package his computer and ship it back to the manufacturer,' and that, in contrast, the Staples Protection Plan would 'provide complete coverage so that Plaintiff would never need to contact the manufacturer for repairs or replacement.'" *Id*. (citation omitted). However, when plaintiff later tried to exchange his computer after internet connectivity problems, he discovered that, despite such reassurances, the Protection Plan provided no coverage until the manufacturer's warranty expired. *Id*. He brought suit under Section 349. *Id*. at 294.

The *Orlander* court held that the contract was ambiguous regarding whether any coverage provided by the manufacturer's warranty would not be provided by Staples. *Id*. at 301. As a result, the sales representative's statements, instead of simply confusing a consumer, were sufficient to incline a reasonable consumer to read the ambiguous contract as offering the services plaintiff believed it had here. *Id*. The contract and statement, taken together, rendered the Protection Plan misleading for purposes of Section 349. *Id; see also Frintzilas v. DIRECTV, LLC*, No. 17 Civ. 2368, 2017 WL 5712707 (S.D.N.Y. Nov. 27, 2017) ("The nub of their claim is that the contracts that tenants sign authorizing the Equipment to be installed are materially deceptive. However, the contractual language that plaintiffs cite in their complaint is straight-forward: the Tenant-subscriber must represent that 'DIRECTV System installation at [address] has been verbally approved by my landlord (or is not required pursuant to my lease or rental

agreement).'  The Court finds it implausible that such a contract, clearly requiring Landlord permission, would be misleading to a 'reasonable consumer.'").

In the present case, the letter is roughly analogous to the statements made by the Staples sales representative: content outside a legal document that may nonetheless influence how a consumer understands that document.  But then the comparison differs dramatically.  While critically, the *Orlander* contract was ambiguous as to the exact terms of the Protection Plan, the Stipulation here is precise: if she had signed it, Stinson would release Demi and Houslanger from all claims and liabilities related to debt collection under the FDCPA and New York law.  (*See* Dkt. No. 1, Ex. 13 at 2–3.)  There is no room for a reasonable consumer to read the Stipulation to mean anything else, and the Stipulation is not "open to more than one reasonable interpretation," as the FDCPA requires.  *Arias*, 875 F.3d at 135 (citation omitted).  This lack of contractual ambiguity means that the letter, unlike the sales representative's statements in *Orlander*, is insufficient to confuse a reasonable consumer.  Moreover, while the sales representative contradicted the terms of the *Orlander* contract, here the letter does no such thing.

There is certainly merit to Stinson's contention that Houslanger could have been more forthcoming in the letter and the Stipulation.  Had Stinson signed the Stipulation, she would have given up nearly all her claims against Defendants; the letter made no mention of this fact.  And Stinson's claim that the paragraph of the Stipulation containing the release is purposefully misleading is compelling: Defendants spend the first six lines of the paragraph repeating, in dense legalese, what had been agreed to elsewhere in the document, when the rest of the Stipulation is written in relatively straightforward and concise language.  (*See* Dkt. No. 1, Ex. 13 at 2.)  But unsavory commercial conduct does not automatically render such behavior a violation of consumer protection laws.  *See, e.g. Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958,

8

961 (1993) (Mem.) ("Whether or not defendant's actions were proper, manifestly they did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of [Section 349]."). Houslanger's conduct, while potentially improper, is not actionable under Section 349.

For similar reasons, Houslanger's conduct with the letter and Stipulation does not give rise to a meritorious FDCPA claim. The unambiguous Stipulation is deceptive under the FDCPA only if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Arias*, 875 F.3d at 135 (internal quotation marks and citation omitted). As discussed above, the Stipulation affords only one interpretation, foreclosing Stinson's FDCPA claim.

### 2. Whether Use of the Letter and Stipulation Was Misleading Under Section 487

Both parties largely argue that the Section 349 and Section 487 claims are coextensive. (Dkt. No. 123 at 8–9; Dkt. No. 127 at 23.) This misunderstands the legal standards, which are different enough to merit a separate analysis for the Section 487 claims.

Section 487 applies to an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." Courts typically require a relatively high bar for such deceit or collusion: a "chronic, extreme pattern of legal delinquency." *Kurawa v. Meyers*, 823 F.Supp.2d 253, 259–60 (S.D.N.Y. 2011) (citing *Kaminsky v. Herrick, Feinstein LLP*, 870 N.Y.S.2d 1, 10 (N.Y. App. Div. 2008); *see also Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*, 513 F.Supp.2d 18, 21–22 (S.D.N.Y. 2007) ("[A] chronic, extreme pattern of legal delinquency is a necessary condition to a finding of liability under § 487."). To establish such a pattern, plaintiffs in the cases cited by Stinson all documented widespread claims numbering in the thousands and direct allegations of fraud. *Mayfield v. Asta*

9

*Funding, Inc.*, 95 F. Supp. 3d 685, 692, 703 (S.D.N.Y. 2015) (law firm filed nearly 60,000 debt collection suits in 3 years supported by fraudulent affidavits); *Diaz v. Portfolio Recovery Assocs. LLC*, 2012 WL 1882976 at *1, *5 (E.D.N.Y. May 24, 2012) (law firm filed over 13,000 complaints in a year, many of which were apparently time barred, with over one third signed by a single attorney); *Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413, 420, 428–29 (S.D.N.Y. 2010) (law firm filed approximately 40,000 fraudulent affidavits of service and other filings per year).

Here, while Stinson includes evidence that Houslanger engaged in similar patterns of behavior with at least two other persons, use of the letter and Stipulation among three people is not sufficient to fit within how courts have treated a "chronic, extreme pattern of legal delinquency" under Section 487 in the FDCPA context. *Kurawa*, 823 F.Supp.2d at 259–60. For one, the breadth of allegedly deceptive behavior is much narrower. And critically, as discussed above, while the letter and Stipulation were somewhat misleading, the lack of ambiguity in the Stipulation renders it, ultimately, not deceptive — certainly, not to the degree of the fraudulent affidavits involved in the cases Stinson cites. As this motion is limited to use of the letter and Stipulation, the Court will refrain from full analysis but will note that Section 487 is potentially more apt for the other behavior at issue in this suit, namely apparently regular use of fraudulent affidavit of services and filing of time-barred complaints. As it pertains to the letter and Stipulation, however, Stinson's claim must be dismissed.

### 3. Conclusion

Defendants' motion for judgment on the pleadings on Stinson's claims under the FDCPA, Section 349, and Section 487, in granted insofar as they relate to alleged misleading use of the letter and Stipulation. Stinson's remaining allegations against Defendants — including

10

those based on the filing of a time-barred lawsuit, use of a false affidavit of service, and response to Stinson's orders to show cause — remain.

### B.      Demi's Motion for Judgment on the Pleadings

Demi argues that it must be entirely dismissed from this case for three reasons: (1) Demi has always been "a passive debt buyer," not a debt collector, which took no action on its own; (2) its role is "limited to theoretical vicarious liability" for other defendants; and (3) Demi did not draft the Stipulation or execute the underlying judgment.  (Dkt. No. 124-1.)

In *Henson v. Santander Consumer USA Inc.*, the Supreme Court held that a creditor — an entity that owns a debt and attempts to collect it for itself — cannot be held liable under the FDCPA, which defines a debt collector as one that "regularly collects or attempt to collect . . . debts owed or due . . . *another*."  137 S. Ct. 1718, 1721 (2017) (quoting 15 U.S.C. § 1692a(6) (emphasis added)).  But the Court explicitly confined its analysis to this definition of debt collector, 137 S. Ct. 1718 at 1721, and courts have long recognized another definition under the FDCPA that covers entities that engage in debt collection as the principal purpose of their business.  *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Burtolotti*, 374 F.3d 56, 61 (2d Cir. 2004) (recognizing "two alternative predicates" for debt collector status); *Page v. Forster & Garbus, LLP*, 2019 WL 5696108, at *5 (E.D.N.Y. June 17, 2019) (noting that, after *Henson*, courts have continued applying the principal purpose test); *see, e.g.*, *Guzman v, Mel S. Harris and Assocs., LLC*, 2018 WL 1665252, at *4 (S.D.N.Y. Mar. 22, 2018) (applying the principal purpose test after *Henson*).

Here, Stinson has alleged that Demi "purchases charged-off consumer debts, and seeks to collect on putative defaulted consumer debt directly and through debt collection law firms." (Compl. ¶ 12.)  Demi denies the allegation (Dkt. No. 42 ¶ 12) and cites a declaration by Todd Houslanger averring that Demi is a "passive debt buyer that forwards its accounts to third parties

11

for collection." (Dkt. No. 124-1 ¶ 8.) Even setting aside that this statement is made outside the pleadings on a 12(c) motion, Demi apparently misunderstands the principal purpose test. An entity with a business model centered on buying defaulted debts and using third parties to collect them is still, despite using third parties, primarily in the business of collecting debt. *See Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488–89 (S.D.N.Y. 2014) (allegations that an entity had the principal purpose of "purchas[ing] [] defaulted consumer debts originally owed or due . . . to others" put that entity "squarely within" the definition of debt collector for purposes of a motion to dismiss); *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868, 2011 WL 4344044, at *10 (S.D.N.Y. Sept. 8, 2011) ("The FDCPA also recognizes that one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor." (citation omitted)); *see also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) ("[B]ecause the FDCPA is primarily a consumer protection statute . . . we must construe its terms in liberal fashion to achieve the underlying Congressional purpose." (citations, internal quotation marks, and alteration omitted)). Here, Stinson has pleaded that Demi has the principal purpose of collecting debts. (Compl. ¶ 12.) These allegations are sufficient to survive a motion for judgment on the pleadings.

As Demi thus remains in the suit under a theory of direct FDCPA liability — not to mention potential liability under Stinson's other claims — this Court need not address Demi's additional contentions. However, to the extent that claims are based on Demi's allegedly misleading use of the letter and Stipulation, they are dismissed as discussed above.

**IV.     Conclusion**

For the foregoing reasons, the motion for partial judgment on the pleadings filed by Defendants Houslanger & Associates, PLLC, Todd Houslanger, Matthew Blake, and Bryan Bryks is GRANTED.  The motion for partial judgment on the pleadings filed by Demi, LLC is GRANTED in part, to the extent the claims against it are based on the alleged misleading use of the letter and Stipulation, and is otherwise DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 122 and 124.

SO ORDERED.

Dated: September 17, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge