UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARBARA STINSON,

      Plaintiff,

   -v-

HOUSLANGER & ASSOCIATES,
PLLC, *et al.*,

      Defendants.

18-CV-11350 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

  Plaintiff Barbara Stinson brings this action against Defendants Houslanger & Associates, PLLC (the "PLLC"), Todd Houslanger, Matthew Blake, Harry Torres, Bryan Bryks, and DEMI, LLC, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York General Business Law § 349 as to all Defendants; violations of the New York Judiciary Law § 487 as to the PLLC, Houslanger, and Bryks; and a conversion claim as to DEMI and Houslanger.  (*See* Dkt. No. 1.)  The Court now has cross-motions for summary judgment before it:  Stinson moves for summary judgment on liability for the alleged violations of the FDCPA, GBL § 349, and Judiciary Law § 487 (Dkt. No. 158); Defendants move for summary judgment dismissing Stinson's complaint in its entirety (Dkt. No. 164).

**I.  Background**

  The Court assumes familiarity with the factual background in this case as set forth in its previous opinion.  *See Stinson v. Houslanger & Assocs., PLLC*, No. 18 Civ. 11350, 2020 WL 5569582, at *1–*2 (S.D.N.Y. Sept. 17, 2020).  However, a brief overview of the relevant undisputed facts is provided below.

  In December 2005, DEMI, by and through the PLLC, filed a summons and complaint against Stinson in New York court seeking to collect an $8,745.12 judgment.  (Dkt. No. 176

1

¶ 48.) The summons and complaint were signed by Todd Houslanger, the principal and sole member of the PLLC, and the verification was signed by Matthew Blake, DEMI's managing agent at the time, and notarized by Houslanger. (Dkt. No. 176 ¶ 49.)

Defendant Harry Torres[1] executed an affidavit of service stating that on January 26, 2006, he served Stinson with the summons and verified complaint at 236 E. 82nd Street, Apartment 4B, in New York City by delivering a copy to "Robert Stinson." (Dkt. No. 159-18.) However, there was no Robert Stinson living at that address in 2006, nor did Stinson live at the address at that time. (Dkt. No. 176 ¶¶ 89, 90–92.) Accordingly, Stinson did not appear in court to defend against the claims and a default judgment was entered against her by the Civil Court of the City of New York on April 11, 2006. (Dkt. No. 159-19.)

Around February 2018, the Westchester County Sheriff's Civil Unit, Execution Department, received an income execution from the PLLC to serve on Stinson's employer. (Dkt. No. 159-21.) Stinson received a copy of the income execution as well. (Dkt. No. 176 ¶ 102.) On February 21, 2018, Stinson filed her initial order to show cause ("OTSC"), claiming that she had not been served with a summons and complaint and that her first notice of legal action was the copy of the income execution. (Dkt. No 159-26.) Upon receipt of the OTSC, Defendants stayed the income execution and filed an opposition. (Dkt. No. 176 ¶¶ 133, 134; Dkt. No. 174-12.)

A week before the hearing on the OTSC, Houslanger sent Stinson a letter stating that DEMI had decided to drop the case. He also enclosed a stipulation vacating the default judgment and a general release provision, discharging Defendants from any claims Stinson may have had against them. (Dkt. No. 1-13.) Stinson declined to sign the stipulation. (Dkt. No. 176

---

[1] Torres has defaulted in this action. (*See* Dkt. No. 74.)

¶ 221.) At the hearing on the OTSC, Defendants moved to adjourn, and their motion was denied. (Dkt. No. 176 ¶ 222.) On May 17, 2018, Judge Ramirez vacated the default judgment against Stinson, finding that Stinson had not been properly served. (Dkt. No. 159-39.)

On December 5, 2018, Stinson filed a complaint against Defendants in this Court, alleging violations of the FDCPA and New York law. (Dkt. No. 1). Defendants filed a motion for judgment on the pleadings (Dkt. No. 122), which was granted in part (Dkt. No. 151). Specifically, the Court dismissed all claims based on the alleged misleading use of the letter and Stipulation and otherwise denied the motion. (Dkt. No. 151 at 13.) On December 7, 2020, Stinson filed a motion for summary judgment as to liability against all Defendants (Dkt. No. 158), and Defendants cross-moved for summary judgment dismissing Stinson's complaint (Dkt. No. 164).

## II.   Discussion

Summary judgment is appropriate when, construing the evidence in the light most favorable to the non-movant, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002) (quotation marks omitted). The moving party has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002).

### A.   FDCPA

#### 1.   Statute of Limitations on FDCPA Claim

As an initial matter, Defendants contend that Stinson's FDCPA claim is time-barred. (*See* Dkt. No. 177 at 6–8.) Stinson does not dispute this but argues that she is entitled to equitable tolling of her claim. (*See* Dkt. No. 181 at 6–10.)

3

The FDCPA provides that an action must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Stinson claims that Defendants violated the FDCPA on numerous occasions, including in 2005 when they filed a time-barred lawsuit against Stinson. (*See* Dkt. No. 161 at 16–20.) Thus, Stinson's lawsuit is barred by the one-year statute of limitations unless equitable tolling applies. The Court concludes that it does.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Though district courts often apply the fraudulent concealment test for equitable tolling — *i.e.*, whether the plaintiff has established that the defendant concealed the cause of action and that his ignorance of the action was not attributable to lack of diligence — the Second Circuit has clarified that the application of the doctrine of equitable tolling is not limited to cases of fraudulent concealment. *See Valex ex rel. Donely v. United States*, 518 F.3d 173, 182–83 (2d Cir. 2008); *see also Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) ("The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of the cause of action.").

Here, Stinson has established that through no fault of her own, she did not become aware of the lawsuit against her until 2018. When she became aware of the default judgment in February 2018, Stinson immediately filed an OTSC, alleging that she had moved from the address allegedly served in 2006. (*See* Dkt. No. 159-39.) The Civil Court of the City of New York granted the OTSC, concluding that Stinson's "motion papers rebuts the process servers['] affidavit and [Defendants do] not dispute the facts alleged." (Dkt. No. 159-39.) Stinson

4

promptly filed this action less than seven months later. (*See* Dkt. No. 181 at 8.)  Stinson therefore pursued her rights diligently once she became aware of the default judgment against her and equitable tolling applies.

### 2. Alleged Violations of the FDCPA

"Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection bases."  *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quotation marks omitted).  In relevant part, the FDCPA prohibits false, deceptive, or misleading representations and prohibits collecting a debt through unfair or unconscionable means.  *See id.*  Claims brought under the FDCPA are analyzed from the perspective of the "least sophisticated consumer," who "lacks the sophistication of the average consumer and may be naïve about the law, but is rational and possesses a rudimentary amount of information about the world."  *Id.* at 135.

Stinson alleges several FDCPA violations by Defendants: (1) filing a time-barred lawsuit; (2) opposing Stinson's OTSC; (3) requesting several adjournments of the OTSC hearings; (4) using the stipulation to attempt to obtain a settlement; and (5) attempting to retain the benefit of a fraudulently obtained judgment.  The Court addresses each in turn.

#### a. Filing a Time-Barred Lawsuit

Stinson first argues that the filing of a time-barred suit by the PLLC and DEMI[2] is a violation of the FDCPA.  Stinson claims that because Discover is a Delaware corporation,

---

[2] There is no genuine dispute that DEMI is a "debt collector" under the FDCPA.  Mr. Blake testified that the primary purpose of DEMI was to purchase charged-off consumer debts to be collected by third parties. (*See* Dkt. No. 159-4 at 33.)  Further, it is licensed by New York state as a "debt collection agency." (Dkt. No. 159-5.)  This puts DEMI "squarely within the first

Delaware's three-year statute, Del. Code Ann. Tit 10 § 8106, barred the lawsuit in civil court. Under New York law, a nonresident who asserts a "cause of action accruing without the state" must do so within the "limitation periods of both New York and the jurisdiction where the cause of action accrued." *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (2010) (citing N.Y. C.P.L.R. 202). "If the claimed injury is an economic one, the cause of action typically accrues where the plaintiff resides and sustains the economic impact of the loss." *Id.* (quotation marks omitted). For business organizations, "one looks to its State of incorporation or its principal place of business." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 530 (1999).

It is undisputed that the original creditor, Discover Bank, is a resident of Delaware. *See Portfolio Recovery Assocs.*, 14 N.Y.3d at 416 ("Discover is incorporated in Delaware and is not a New York resident.") (*see also* Dkt. No. 176 ¶ 70; Dkt. No. 159-12). Therefore, the lawsuit was time-barred because it was not brought until after the expiration of Delaware's three-year limitations period. Several district courts within this Circuit have held that the filing of such a time-barred complaint is a violation of the FDCPA, and this Court agrees. *See, e.g.*, *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014); *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 Civ. 3920, 2012 WL 1882976, at *4 (E.D.N.Y. May 24, 2012); *Baptist v. Global Heading & Inv. Co., L.L.C.*, No. 04 Civ. 2365, 2007 WL 1989450, at *5 (E.D.N.Y. July 9, 2007). Under the least sophisticated consumer test, the filing of lawsuits, though time-barred, could certainly lead a consumer to believe that the debt collection agency had a valid claim against him.

---

definition of debt collector" under the FDCPA. *See Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014). "Indeed, the FDCPA recognizes that one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor; thus, the [FDCPA] treats assignees of debt as debt collectors if the debt sought to be collected was in default when acquired by the assignee." *Id.* at 489 (quotation marks omitted).

Stinson also argues that Houslanger and Blake are personally liable for violations of the FDCPA. "While the Second Circuit has yet to rule explicitly on the issue of individual FDCPA liability, many courts, including courts within this district, have recognized that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." *Baltazar v. Houslanger & Assocs., PLLC*, No. 16 Civ. 4982, 2018 WL 3941943, at *17 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 16 Civ. 4982, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (quotation marks omitted); *see also Zucker v. Porteck Glob. Servs., Inc.*, No. 13 Civ. 2674, 2015 WL 6442414, at *6 (E.D.N.Y. Oct. 23, 2015) ("Officers or employees of a debt collecting agency may be held jointly and severally liable with the agency if they have acted affirmatively."). Here, both Houslanger and Blake engaged in the prohibited conduct — filing a time-barred lawsuit — by signing the summons and verified complaint. (Dkt. No. 176 ¶ 49.) Further, Houslanger is the sole member of the PLLC and "organizes, manages, and controls the operations of the firm." (Dkt. No. 176 ¶ 7.) He was therefore necessarily personally involved in the wrongful collection efforts of Stinson's debt. *See Jordan v. Tucker, Albin & Assocs., Inc.*, No. 13 Civ. 6863, 2017 WL 2223918, at *6 (E.D.N.Y. May 19, 2017) (defendant "acted affirmatively in perpetrating the prohibited conduct" because he was the "sole employee responsible for collecting plaintiffs' debt").

Though the FDCPA is a strict liability statute, *see Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), the PLLC and DEMI raise a "bona fide error" defense, *see* 15 U.S.C. § 1692k(c). (Dkt. No. 177 at 27–29.) They argue that the PLLC applied the state of residency of the owner of the debt – DEMI – not the original creditor, for purposes of calculating the limitations period, and DEMI resides in New York. (Dkt. No. 177 at 27.) The PLLC claims that until the decision in *Portfolio Recovery Associates*, 14 N.Y.3d 410, it was unaware that

section 202 of the CPLR applied and believed in good faith that the applicable statute of limitations was twenty years under section 211(b) of the CPLR.  (Dkt. No. 177 at 28.)

But the application of CPLR 202 in this situation applied before the New York Court of Appeals' decision in *Portfolio Recovery Associates*.  That decision considered whether a choice-of-law clause incorporated the statute of limitations of the designated jurisdiction, concluding that it did not.  *Portfolio Recovery Assocs.*, 14 N.Y.3d at 416.  Though the court held that reference to CPLR 202 had to be made to determine the relevant limitations period, *see id.*, this did not create new law.  *See Windsearch, Inc. v. Delafrange*, 90 A.D.3d 1223, 1224 (N.Y. App. Div. 2011) ("We do not agree with plaintiff that the holding in *Portfolio* represents a new rule of law.").  Under Second Circuit precedent, the bona fide error defense does not apply to mistaken views of the law.  *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Stinson's motion for summary judgment as to the liability of the PLLC, DEMI, Houslanger, and Blake under the FDCPA for filing a time-barred suit is therefore granted.

### b.    Defendants' Opposition to Stinson's OTSC

Stinson next argues that Defendants' opposition to her OTSC was deceptive and violated the FDCPA.  (Dkt. No. 161 at 22–25.)  She claims that under the "least sophisticated consumer" standard, statements in the opposition by a licensed attorney that she was "properly served" and that the income execution was lawfully obtained are misleading and may induce a consumer to settle or dismiss the suit.  (Dkt. No. 161 at 23.)  Stinson additionally argues that the opposition was deceptive under the FDCPA because Defendants failed to serve the opposition until shortly before the OTSC hearing, resulting in a delay in proceedings.  (Dkt. No. 161 at 24–25.)  These arguments are without merit.

*Gutman v. Malen & Associates, P.C.*, 512 F. Supp. 3d 428 (E.D.N.Y. 2021), is instructive. In *Gutman*, the plaintiff claimed that the defendant represented to the state court that it had sent the plaintiff a notice of default. *Id.* at 431. However, the defendant had actually sent the notices to the plaintiff's attorney. *Id.* The district court held that the misrepresentation was not material under the FDCPA because (1) "the representation was addressed to the state court, not plaintiff, and so is on the outer bounds of the FDCPA's applicability"; and (2) "plaintiff does not allege (and the evidence does not suggest) that defendant's misrepresentation about its compliance misled or deceived her as to the legal status of the debt or prevented her from responding to or disputing the action." *Id.* at 432.

Similarly, Stinson points to statements made by Defendants in their opposition to the OTSC, which is a representation to the state court, *not* to Stinson. And prior to the filing of the third OTSC, Stinson had not presented any documentation that she was improperly served, leading to the reasonable decision by Defendants to oppose the OTSC. The evidence also does not show that Defendants' representation that Stinson was properly served in 2005 prompted her to settle rather than litigate the claim. To the contrary, Stinson continued to litigate against the default judgment and ultimately succeeded. (*See* Dkt. No. 159-39.) Nor did the Defendants' delay in serving Stinson with the opposition to the OTSC affect Stinson's decision to continue to pursue the litigation. Indeed, Stinson simply refiled the OTSC with documentation demonstrating that she did not live at the address where she was allegedly served. (Dkt No. 159-37).[3] The Court concludes that under the least sophisticated consumer test, Defendants' actions

---

[3] Because this Court concludes that Defendants' opposition to the OTSC is not a violation of the FDCPA, the Court also concludes that Bryks, an associate at the PLLC, is not individually liable for any alleged misrepresentations in the opposition.

do not amount to a FDCPA violation. Stinson's claim that Defendants' opposition to the OTSC is an FDCPA violation therefore fails as a matter of law.

### c. Prolongment of Vacatur of the Default Judgment

Stinson claims that Defendants violated the FDCPA by intentionally prolonging the vacatur of the default judgment. (Dkt. No. 161 at 26–30.) She argues that Defendants' decisions (1) refusing to unconditionally vacate the judgment before the OTSC hearing in April 2018; (2) refusing to vacate the judgment at the hearing; and (3) seeking an adjournment at the April 2018 hearing all "misrepresented to Ms. Stinson or to both Ms. Stinson and the court that [the PLLC] had a valid basis to oppose vacatur of the judgment when in fact [the PLLC] did not even attempt to ascertain a valid basis." (Dkt No. 161 at 26.) According to Stinson, it is Defendants' standard practice to baselessly oppose OTSCs and refuse to consent to a vacatur. (Dkt. No. 161 at 28.)

Stinson primarily relies on *Currier v. First Resolution Investment Corp.*, 762 F.3d 529 (6th Cir. 2014). In *Currier*, the defendant had filed a judgment lien against the plaintiff's home even though the default judgment against the plaintiff was not yet final under state law, as was required to issue a judgment lien. *See id.* at 532. In fact, the plaintiff had just days prior filed a motion to vacate the judgment, asserting a statute of limitations defense. *Id.* The Sixth Circuit held that the plaintiff had plausibly alleged that the defendant's decision to file an invalid judgment lien was an FDCPA violation. *See id.* at 535. Stinson claims that like the defendant in *Currier*, by "refusing to unconditionally vacate a sewer service judgment of a time-barred debt, and dragging out proceedings on the [OTSC] through baseless adjournments, [the PLLC] falsely represented that there was a legitimate legal basis for their opposition." (Dkt No. 161 at 27.)

This Court disagrees with Stinson and concludes that *Currier* is inapposite for several reasons. First, the Sixth Circuit was considering a motion to dismiss, not a motion for summary

10

judgment, which requires application of a higher burden of proof for the moving party. Second, the alleged FDCPA violation considered by the court in *Currier* was the filing of the invalid judgment lien, which bears little resemblance to the alleged violations — failing to immediately agree to vacate the default judgment and requesting adjournments — here. Not only are these alleged violations substantially less harmful than the filing of the judgment lien in *Currier*, but "courts in this Circuit have [also] been reluctant to impose liability under the FDCPA for statements made . . . during the course of debt collection litigation." *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14 Civ. 1868, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014). This is so because "the FDCPA's central purpose of protecting unsophisticated consumers from debt collectors is not implicated in state court proceedings, where litigants enjoy myriad procedural and substantive protections." *Id.* (quotation marks and citations omitted). Third, the timing of events is very different here. In *Currier*, the defendant continued to seek the collection of the debt after the plaintiff filed a motion to vacate the default judgment. Here, Defendants actually stayed the income execution upon receipt of Stinson's first OTSC seeking to vacate the default judgment. (Dkt. No. 174-12.) Finally, Stinson provides little evidence of the harm caused by Defendants' alleged violations. Though Stinson intimates that plaintiffs with worthy claims may be prompted to settle rather than litigate, the evidence suggests otherwise. In support of her motion for summary judgment, Stinson filed declarations from at least three other individuals who had filed a motion to vacate the default judgment obtained by Defendants, but not one of the declarants, including Stinson, stated that due to Defendants' delaying tactics, they decided to drop the lawsuit. (*See* Dkt. No. 159-42, 159-48, 159-58.)

Stinson's claim that Defendants' actions to prolong the vacatur of default judgment constitute an FDCPA violation therefore fails as a matter of law.

### d. Defendants' Use of the Stipulation

This Court previously dismissed Stinson's claims that Defendants' conduct with respect to the letter and Stipulation sent one week before a hearing on the OTSC violated the FDCPA. (Dkt. No. 151.) But Stinson argues that while the Opinion and Order concluded that the Stipulation did not violate section 1962e of the FDCPA, the Court did not consider whether it violated section 1692f of the FDCPA. Defendants contend that Stinson already made this argument in her opposition to the motion for judgment on the pleadings and urges the Court not to reconsider it. (Dkt. No 177 at 17.)

The Court need not address whether Stinson has already made this argument, because for reasons stated in the Court's September 17, 2020 Opinion and Order (Dkt. No. 151), the Court concludes that Stinson failed to plausibly allege that Defendants' use of the Stipulation is a section 1692f violation. *See De La Cruz v. Fin. Recovery Servs., Inc.*, No. 17 Civ. 9931, 2019 WL 4727817, at *7 (S.D.N.Y. Mar. 28, 2019) ("[I]f Defendant's collection letter is not 'misleading' within the meaning of Section 1692e, it is not 'unfair' or 'unconscionable' within the meaning of Section 1692f."). Because Stinson's claim fails as a matter of law, the Court also concludes that Houslanger and Bryks are not personally liable under Section 1692f for the use of the letter and Stipulation.

### e. Ratification of Torres' False Affidavit of Service

Stinson argues that Defendants violated the FDCPA by ratifying Torres' false affidavit of service because Defendants knew or should have known that service had never been executed. (Dkt. No. 161 at 32–37.)

"Ratification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 691 (2d

Cir. 2011) (quotation marks and citation omitted).  Ratification "must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language." *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159, 165 (S.D.N.Y. 2016) (citation omitted).

    Stinson has failed to show that there is a genuine issue of material fact that Defendants knew or should have known that Torres had executed a false affidavit of service and that Stinson had never been served.  Stinson merely argues that Defendants "have known the Affidavit of Service was false since at least March 9, 2018, if not sooner, when they received the CT DMV record showing Ms. Stinson lived in Greenwich, CT at the time of service." (Dkt. No. 161 at 33.)  But, as Defendants correctly point out, the DMV record does not prove that Stinson was not served at the New York address; rather, it establishes only that at the time of service, Stinson had a Connecticut driver's license with a Connecticut address. (Dkt. No. 171 at 24.)  It does not affirmatively demonstrate that Stinson did not live in New York at the time of service; indeed, Defendants could have reasonably concluded that Stinson had multiple residences at the time of service.  Nor does Stinson provide any evidence that Defendants knew or should have known that Torres executed a false affidavit of service in 2006.

    Stinson's reliance on *Guzman v. Mel S. Harris & Associates, LLC*, No. 16 Civ. 3499, 2018 WL 1665252 (S.D.N.Y Mar. 22, 2018), is misplaced.  In *Guzman*, the court concluded that that there was a triable issue of fact as to whether the sole officer of Samserv, the company hired to serve process, knew or should have known that the process servers he used regularly made false claims that they had served process.  *Id.* at *8.  But the evidence provided by the plaintiff in *Guzman* that the affidavit of service was false — and that the defendant should have known that

13

it was false — was much more robust. There, the plaintiff identified information in a database kept by Samserv in which the process server claimed to have attempted service of process at two different locations at the same time and claimed to have attempted service multiple times on one date in various locations. *Id.* at *6. The plaintiff alleged that both of these statements were false because the process server simply could not be in two places at one time and because the various locations he traveled to on that one day were too far apart to be feasible. *Id.* at *7. The court held that a reasonable juror could find that given that the defendant had access to the database, he "knew or should have known that process servers used by Samserv were executing false affidavits of service." *Id.* at *9. Stinson points to no comparable evidence that Defendants knew or should have known that Torres had executed a false affidavit of service when presented with Stinson's license, let alone in 2006 when Torres stated that he had served Stinson, through "Robert Stinson," at a New York City residence.

### 3. Damages

Stinson has not moved for summary judgment on damages. However, the parties are reminded that damages for any FDCPA claim are limited to actual damages, costs, and attorneys' fees, and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). "Other than the additional damages expressly permitted by statute, [t]he FDCPA does not allow for the award of punitive damages." *Guzman*, 2018 WL 1665252, at *14 n.20.

B.     GBL § 349

1.     **Alleged Violations of GBL § 349**

Stinson argues that Defendants' conduct discussed in the previous section, with the exception of the use of the Stipulation, also violate New York's General Business Law § 349.[4]

GBL § 349 "makes unlawful deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quotation marks omitted). To state a § 349 violation, a plaintiff must show that "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021). Unlike the FDCPA, GBL § 349 applies the "reasonable consumer test," a higher standard, to determine what qualifies as a deceptive practice. *See Nick's Garage*, 875 F.3d at 124.

For the reasons discussed in the previous section, Defendants are entitled to summary judgment with respect to the following alleged GBL § 349 violations: (1) Defendants' decision to oppose the OTSC; (2) Defendants' prolongment of the default judgment litigation; and (3) Defendants' alleged ratification of Torres' actions. Given the higher "reasonable consumer standard," the Court concludes that no reasonable consumer would find these actions to be materially misleading. However, Stinson's claim that the filing of time-barred lawsuits constitutes a GBL § 349 violation warrants more scrutiny.

---

[4] Defendants initially argue that Stinson's GBL § 349 claims are time-barred. While it is true that Stinson's GBL § 349 claims are subject to a three-year period of limitations, *see Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001), equitable tolling applies to these claims for the same reasons that equitable tolling applies to Stinson's FDCPA claims.

Defendants focus exclusively on the consumer-oriented element. They argue that Stinson only speculated that Defendants had widespread practices of prosecuting time-barred claims but does not submit any substantial and admissible evidence. (Dkt. No. 171 at 30.) To satisfy the first element, plaintiffs must establish that defendants' "acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25 (1999); *see also Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) ("The consumer-oriented requirement may be satisfied by showing that the conduct at issue potentially affect[s] similarly situated consumers." (quotation marks omitted)). "Private contract disputes, unique to the parties, [do] not fall within the ambit of the statute." *Id.*

Stinson has raised triable issues of fact as to whether Defendants engaged in "consumer-oriented conduct" by repeatedly filing time-barred lawsuits. In relevant part, Houslanger, the sole member of the PLLC, testified in his deposition that the PLLC's practice in and around 2005 was to look at the state of residency of the owner of the debt — not the residency of the original creditor — to determine the statute of limitations. (Dkt. No. 159-1 at 170:05-23.) And Stinson submitted evidence that in 2005 alone, the PLLC filed over 11,000 actions against alleged debtors. (Dkt. No. 176 ¶ 74.) "Numerous courts in the Southern District of New York have held that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349." *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779, 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017). Accordingly, there is a genuine issue of material fact as to whether Defendants engaged in "consumer-oriented" conduct by failing to apply the correct statute of limitations and filing time-barred lawsuits. The Court concludes that Stinson has satisfied the second and third elements as a matter of law.

## 2. Punitive Damages Under GBL § 349

Stinson argues that under GBL § 349, punitive damages are not limited to $1,000. (Dkt. No. 161 at 37–41.) Defendants counter that punitive damages are not warranted here, and even if they are, persuasive authority caps punitive damages under GBL § 349 at $1,000. (Dkt. No. 171 at 36–37.)

District courts in this Circuit are divided as to whether punitive damages under GBL § 349 are capped at $1,000. *See Guzman*, 2018 WL 1665252, at *14. It is unnecessary to wade into this division because the Court agrees with Defendants that Stinson has not demonstrated that Defendants have acted with the requisite "moral indifference" required to impose punitive damages. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 273 (S.D.N.Y. 2014). In general, "[t]he conduct for which courts generally award punitive damages is that which is close to criminality, being variously described as utter recklessness, reckless and of a criminal nature, wanton or malicious, and gross and outrageous." *Dubai Bank, Ltd., N.Y. Branch v. Joshi*, No. 85 Civ. 5005, 1989 WL 168088, at *4 (S.D.N.Y. Aug. 29, 1989) (quotation marks omitted). Stinson has provided no evidence that Defendants' conduct comes "close to criminality." Rather, she has demonstrated that Defendants filed a time-barred suit against her because they failed to look at the residency of the original creditor, and that Defendants may have done this repeatedly. Punitive damages are not warranted for this type of conduct.

## C. Alleged Violations of Judiciary Law § 487

Stinson alleges that the same conduct that is the basis of her GBL § 349 claim also supports her Judiciary Law § 487 claim against the PLLC, Houslanger, and Bryks. Defendants argue that the claim should be dismissed because Defendants' alleged misconduct stems from the

17

underlying action (the default judgment lawsuit) and the proper remedy is through the lawsuit itself. (Dkt. No. 177 at 33–34).[5]

For the reasons discussed above, Stinson's § 487 claims based on the (1) opposition to the OTSC; (2) the prolongment of the vacatur litigation; and (3) the alleged ratification of the fraudulent service are dismissed. The Court also concludes that Stinson has failed to raise a triable issue of fact with respect to the § 487 claim in which the underlying conduct is Defendants' filing of time-barred lawsuits.

"Under Judiciary Law § 487(1), an attorney who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party is guilty of a misdemeanor and may be liable to the injured party for treble damages in a civil action." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 177 (2020) (cleaned up). This section imposes liability on attorneys who intentionally make false statements. *See id.* at 178. "Given the requirement that the conduct involve 'deceit or collusion' and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency." *Id.*

Stinson has provided no evidence that Defendants intended to deceive the courts by the filing of time-barred lawsuits. Indeed, Houslanger testified in his deposition that filing time-barred lawsuits was *not* intentional. Rather, his firm applied the state of residency of the owner of the debt, not the original creditor (as required), to determine the applicable limitations period. (Dkt. No. 159-1 at 165:1–166:6; 170:05–23). Though this was legal error, it does not rise to the level of scienter needed to establish a § 487 claim.

---

[5] Defendants argue that the § 487 claims are time-barred (Dkt. No. 177 at 33), but the Court concludes that Stinson is entitled to equitable tolling for these claims as well.

### D. Conversion Claim

Finally, Defendants DEMI and Houslanger move for summary judgment on Stinson's conversion claim. They argue that DEMI and Houslanger never exercised any control over Stinson's money, which is required to establish a conversion claim. (Dkt. No. 171 at 34.) Though Stinson does not address Defendants' argument in her opposition to the cross-motion for summary judgment, the complaint alleges that the basis for the conversion claim was Houslanger's and DEMI's control "over Plaintiff's wages and money, interfering with [her] right to possession of the same, by continuing to collect in violation of the order staying collection, and, moreover, by willfully refusing to comply with a court order to return the previously garnished funds." (Dkt. No. 1 ¶ 141.)

The Court agrees with Defendants. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 403–04 (2d Cir.2006) (internal quotations and citation omitted). Thus, an essential element of a conversion claim is actual control over another's goods. But Stinson's allegations in her complaint are not borne out by the evidence produced during discovery. Defendants stayed the income execution upon receipt of Stinson's OTSC (Dkt. No. 165-15) and Stinson provides no support for her claim that Defendants received any of her garnished funds. Though during a phone call Bryks told Stinson that he was "willing" to continue to stay the execution (Dkt. No. 159-34 at 20:24–21:4), which Stinson took to mean that he personally could lift the stay at any moment (Dkt. No. 176 ¶ 170), there is no evidence that Defendants *did* illegally lift the stay or took ownership over any of Stinson's money. Accordingly, Stinson's conversion claim fails as a matter of law and Defendants' motion for summary judgment as to the conversion claim is granted.

### III. Conclusion

For the foregoing reasons, it is hereby ORDERED that:

- Plaintiff's motion for summary judgment on the FDCPA claim is GRANTED in part with respect to Defendants' filing of the time-barred lawsuit and is otherwise DENIED. Defendants' motion for summary judgment on the FDCPA claim is DENIED with respect to the filing of time-barred lawsuits and is otherwise GRANTED;
- Plaintiff's motion for summary judgment on the GBL § 349 claim is DENIED. Defendants' motion for summary judgment on the GBL § 349 claim is DENIED with respect to Defendants' filing of the time-barred lawsuit and is otherwise GRANTED;
- Plaintiff's motion for summary judgment on the Judiciary Law § 487 claim is DENIED; and Defendants' motion for summary judgment on that claim is GRANTED; and
- Defendants' motion for summary judgment on the conversion claim is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 158 and 164.

SO ORDERED.

Dated: September 28, 2021
    New York, New York

_____
J. PAUL OETKEN
United States District Judge

20